# IN THE COURT OF APPEALS OF IOWA

No. 18-2002
Filed March 6, 2019

IN THE INTEREST OF R.P., C.L., and B.T.,
Minor Children,

R.P., Father of R.P.,
    Appellant,

T.L., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

Parents separately appeal juvenile court rulings in a termination-of-parental-rights proceeding. **AFFIRMED ON BOTH APPEALS.**

Daniel M. Northfield, Urbandale, for appellant father.

Jesse A. Macro Jr. of Macro & Kozlowski, LLP, West Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Michael Sorci of Youth Law Center, Des Moines, guardian ad litem for minor children.

Considered by Tabor, P.J., Bower, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**SCOTT, Senior Judge.**

Parents separately appeal juvenile court rulings in a termination-of-parental-rights proceeding. Both parents challenge the termination of their parental rights to a child they share, R.P., born in 2017. The mother additionally appeals the termination of her parental rights to another of her children, C.L., born in 2011.[1] The mother also contests the juvenile court's denial of her motion regarding reasonable efforts as to R.P., C.L., and a third child, B.T., born in 2012.[2] The father argues because R.P. was never "removed" from his care, the evidence is insufficient to support the termination of his parental rights under Iowa Code section 232.116(1)(h) (2018). The mother also challenges the sufficiency of the evidence supporting the statutory grounds for termination of her parental rights. Both parents argue termination of their parental rights is not in the children's best interests. Finally, the mother argues the State failed to make reasonable efforts in relation to drug testing.

**I.      Background Facts and Proceedings**

The children came to the attention of the Iowa Department of Human Services (DHS) in October 2016 upon concern for domestic violence between the mother and father in the children's presence as well as the mother's substance abuse, mental health, and homelessness. The children were formally removed from the mother's care in March 2017. The father was incarcerated at this time. The children were adjudicated to be in need of assistance in April.

---

[1] The juvenile court also terminated C.L.'s father's rights. He does not appeal.
[2] B.T.'s father's parental rights were not affected by these proceedings.

The mother has an extensive history of alcohol and substance abuse. Although we acknowledge the mother has made significant strides in some areas and is able to appropriately parent the children when she is not under the influence, the mother continued to test positive for methamphetamine throughout the life of the case. The mother continues to deny using drugs and refuses to acknowledge it is a problem. The mother also suffers from a number of underlying mental-health issues which negatively affect her ability to appropriately parent the children. The father also has an extensive history of substance abuse spanning more than thirty years. The father was in and out of jail throughout these proceedings and, at the time of the termination hearing, was serving a term of imprisonment with an expected release date in 2021. However, the father testified he was being considered for release on "special parole" about a month after the termination hearing. The father has not meaningfully participated in services, even during periods he was not in jail. The father testified he has completed multiple classes in prison relative to his fitness as a parent. R.P. has spent less than ten hours with his father since his birth in February 2017. The evidence clearly and convincingly establishes there is no bond between R.P. and his father.

The State ultimately petitioned for termination of parental rights. A hearing was held in August 2018. In October, the juvenile court entered an interim ruling finding the State met its burden for termination of both parents' rights and termination is in the children's best interests.[3] The court ordered an additional

---

[3] Specifically, the court found the evidence sufficient for termination of the mother's rights under Iowa Code section 232.116(1)(f) as to C.L. and B.T. and section 232.116(1)(g) as to all three children. The court found the evidence sufficient to terminate both parents' rights to R.P. under section 232.116(1)(h).

hearing be held to consider the potential application of the statutory exceptions to termination contained in Iowa Code section 232.116(3). In November, following said hearing, the court declined to apply a statutory exception to termination as to C.L. and R.P. The court placed those children in DHS custody for relative adoption. However, the juvenile court declined to terminate the mother's rights to B.T., citing the statutory exception to termination contained in Iowa Code section 232.116(3)(a), which permits the court to forego termination if a relative has legal custody of the child. As noted, both parents appeal.

## II.      Standard of Review

Appellate review of termination-of-parental-rights proceedings is de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014)). Our primary consideration is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

## III.      Analysis

### A.      Sufficiency of the Evidence

Both parents challenge the sufficiency of the evidence supporting the statutory grounds for termination. We will consider their arguments in turn.

The father's rights to R.P. were terminated under Iowa Code section 232.116(1)(h). He simply argues because R.P. was never "removed" from his care, the evidence is insufficient to support the termination of his parental rights under this provision. *See* Iowa Code § 232.116(1)(h)(3). In support of his position, the father cites *In re C.F.-H.*, 889 N.W.2d 201 (Iowa 2016). Bypassing the State's

error-preservation challenge, we again repeat our post *C.F.-H.* position that removal of the child from one parent is sufficient to support the termination of another parent's parental rights. *See, e.g.*, *In re J.H.*, No. 18-1425, 2018 WL 5840198, at *2 (Iowa Ct. App. Nov. 7, 2018), *further review denied* (Dec. 4, 2018); *In re M.G.*, No. 18-0775, 2018 WL 3912208, at *2 (Iowa Ct. App. Aug. 15, 2018), *further review denied* (Sept. 11, 2018); *In re S.E.*, No. 17-1678, 2018 WL 542384, at *4 (Iowa Ct. App. Jan. 24, 2018); *In re K.H.*, No. 17-0384, 2017 WL 2189769, at *2 (Iowa Ct. App. May 17, 2017); *In re C.H.*, No. 16-2179, 2017 WL 1278368, at *3 (Iowa Ct. App. Apr. 5, 2017); *In re Z.G.*, No. 16-2187, 2017 WL 1086227, at *4 (Iowa Ct. App. Mar. 22, 2017); *In re A.F.*, No. 16-2098, 2017 WL 936207, at *3 (Iowa Ct. App. Mar. 8, 2017). The child was formally removed from the mother's care in March 2017. We reject the father's challenge.

The juvenile court terminated the mother's rights to C.L. under section 232.116(1)(f) and (g) and to R.P. under section 232.116(1)(g) and (h). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to focus on paragraph (f) as to C.L. and paragraph (h) as to R.P. The mother only challenges the State's establishment of the final element of each of those provisions—that the children could not be returned to her care at the time of the termination hearing. *See* Iowa Code § 232.116(1)(f)(4), (h)(4) (requiring clear and convincing evidence that the child cannot be returned to the custody of the child's parents at the present time); *D.W.*, 791 N.W.2d at 707 (interpreting the statutory language "at the present time" to mean "at the time of the termination hearing"). We fully acknowledge that the mother has made great

strides in a number of areas, and we commend her for her efforts. We also recognize the mother is able to appropriately parent the children when she is not under the influence. That being said, the mother continued to test positive for methamphetamine throughout the life of the case.[4] A child cannot be returned to a parent if the child would be at risk of an adjudicatory harm upon return. *See In re A.M.S.*, 419 N.W.2d 723, 725 (Iowa 1988). Continued methamphetamine use by a parent creates a risk of adjudicatory harm. *See* Iowa Code § 232.2(6)(n); *see, e.g., In re T.B.*, No. 18-1139, 2018 WL 4361181, at *2 (Iowa Ct. App. Sept. 12, 2018). We conclude the State met its burden to prove by clear and convincing evidence that the children could not be returned to the mother's care at the time of the termination hearing.

### B.    Best Interests

Both parents argue termination of their parental rights is not in their children's best interests. Specifically, the father argues termination is contrary to R.P.'s best interests because the father "desires to make the child part of his life," and loss of his natural father is not in R.P.'s best interests. In determining whether termination is in the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). Although the father testified he has participated in prison classes relative to his fitness as a parent, he declined to

---

[4] We acknowledge the mother tested negative for drugs on a number of occasions through third-party testing. Upon our de novo review, we find the reliability of those tests questionable.

participate in services in an uncontrolled environment before his incarceration, and R.P. has had virtually no contact with the father for his entire life. The "defining elements in a child's best interests" are the "child's safety and his or her need for a permanent home." *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (quoting *J.E.*, 723 N.W.2d at 802 (Cady, J., concurring specially)). Even if the father is released from prison in the near future, he has no relationship with his son and he has not established himself as a fit parent outside of a custodial setting. Furthermore, this child deserves permanency and stability now, which the father cannot provide. Considering the child's long-range as well as immediate interests, we find termination of the father's parental rights is in R.P.'s best interests.

The mother argues termination of her parental rights is not in the children's best interests because of "the closeness and the nature of the relationship between the mother and children." To some extent, the best-interests determination must be made upon past conduct. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). A life of substance abuse is all this mother knows. While we hope the mother prevails in her battle with substance abuse, "we cannot deprive a child of permanency after the State has proved a ground for termination" upon such sentiments. *See In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012). The mother has had ample time to get her substance abuse in check, and she has been unable to do so. "Once the limitation period lapses, termination proceedings must be viewed with a sense of urgency." *C.B.*, 611 N.W.2d at 495. While recognizing the mother and children share a bond, we find it would be contrary to these children's best interests to continue to string them along while the mother gets her life together. *See A.B.*, 815 N.W.2d at 778. To the extent the mother is arguing the permissive

statutory exception to termination contained in Iowa Code section 232.116(3)(c) should be applied, we disagree. In any event, although it is clear the children share a bond with the mother, no evidence was presented that "termination would be detrimental" to the children as a result of the severance of that bond. *See* Iowa Code § 232.116(3)(c). Consequently, the mother failed to carry her burden to establish the exception. *See A.S.*, 906 N.W.2d at 476.

### C. Reasonable Efforts

Finally, the mother argues the court erred in denying her motion concerning reasonable efforts. Two days before the termination hearing in August 2018, the mother filed a "motion to determine if reasonable efforts were made." In the motion, the mother referenced a March 2018 permanency order in which the juvenile court ordered specific drug testing of the mother be completed in April, May, and June. In her motion, the mother complained the specific protocol ordered by the juvenile court was not followed and, as such, DHS failed to provide reasonable efforts. However, a de novo review of the record reveals DHS made reasonable efforts at following the protocol ordered by the juvenile court, and those efforts were thwarted by the mother. We reject the mother's reasonable-efforts challenge.

## IV. Conclusion

We affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**